## Pioneer Fire-proof Construction Co. v. William Sunderland.

1. MOTORMEN — *Reasonable Care.*—A motorman in charge of an electric car is required to use reasonable care to avoid the danger of frightening horses, and, after discovering such danger, if his conduct is either grossly negligent, or willful and wanton, his employer will be liable.

Action in Case, for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. H. M. TRIMBLE, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

SAMUEL RICHOLSON, attorney for appellant; F. J. CANTY, of counsel.

BUTTERS, CARR & GLEIM, attorneys for appellee; LINCOLN & STEAD, of counsel.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by appellee against appellant to recover damages for injuries alleged to have been sustained by him through the negligence, or willful and wanton misconduct, of servants of the latter.

This case has been in this court before. On the former trial the defendant below had secured a verdict in its favor and the case was reversed and remanded on account of error in an instruction and the admission of improper evidence. Sunderland v. Pioneer Fire-proof Construction Co., 78 Ill. App. 102. There were seven counts in the original declaration, and, after the cause was remanded, two amended counts were added. Five of the original counts and one amended count charged negligence on part of appellant and its serv-

ants, while two of the original counts and one amended count charged that the injury was caused by the willful and wanton acts of a servant of appellant. Upon the second trial in the court below the jury gave a verdict for appellee for $2,000; judgment was entered for the amount of the verdict and an appeal taken to this court.

Appellant owned and operated fire-clay works in Ottawa, Illinois, and conveyed the clay used by it from the bank on the opposite side of the Fox river by means of clay cars drawn by an electric motor car, upon a track similar to an electric street car track. This track was laid along the south side of the Main street bridge across the river. The motor car had a frame-work extending eight or ten feet above the trucks on which it rested, and, while running, made a hissing sound similar to that made by an ordinary electric street car. The bridge was 237 feet long and eighteen feet wide, about one-third of the width being taken up by the car tracks. From the east end of the bridge the car track curved to the south. There was also a descent of some eight feet from the bridge to the street a short distance further east. The bridge was a public thoroughfare and within the city limits.

It appears from the weight of the evidence that at the time the injury is alleged to have occurred, appellee drove upon the west end of the bridge in a buggy, with a companion, the witness Chapman, just as a motor car drawing two coal cars, in charge of two of appellant's employes, was coming upon the east end of the same. One of the employes, the motorman, was in the front of the motor car, facing west. Appellee, seeing the car approaching, handed the lines to his companion, got out of the buggy, went to the head of his horse, which was already badly frightened, and tried to quiet him. Appellee claimed that he motioned and cried to the motorman to stop the car, but that the latter paid no attention to him and the car continued on its way until opposite him, when the motorman started it faster, thereby increasing the noise and hissing sound, causing the horse to run away. Appellee was dragged by the

horse to the east end of the bridge and thrown down, suffering fractures of his leg, collar bone and elbow joint. The injuries received by him caused him great pain and suffering, and are, to some extent, permanent. Appellee claimed and produced evidence to the effect that the horse was ordinarily quiet and had never before exhibited unruly symptoms. Appellant claimed and produced evidence tending to show that no signals were given by appellee to the motorman; that the speed of the cars was not increased; that the horse was unsafe, and was known to be so by appellee, and that the latter had sufficient time and opportunity to have taken the horse from the bridge in safety after he saw the cars coming. The weight of the proof, however, was evidently in favor of appellee, and the jury was justified in so finding.

It was claimed by the appellant that its cars had the right of the bridge and the streets through which it passed, as well as the horse and buggy of appellant; that the mere fact that the horse became frightened at the appearance of or sounds made by the motor car and ran away, did not make the appellant liable, but that to entitle appellee to recover there must have been some misconduct on the part of appellant's servants having control of the motor car. To sustain his position appellant cites authorities relating to the operation of public electric street cars. We are not prepared to say that the rules applying to the running of public street cars, which are operated for the benefit of the public, apply with the same force to appellant's line, which is operated by a private corporation for its own benefit and is not subject to public use. But even if appellant's theory of the law is correct, as applied to this case, we are of opinion there was ample evidence to show that the motorman failed to use reasonable care to avoid the danger after discovering there was danger of the horse running away, and that his conduct was either grossly negligent or willful and wanton.

Appellant objected to the admission of certain testimony offered by appellee, concerning the disposition of the horse,

on the ground that the witnesses were persons without experience with horses. Two of them were women who had each driven the horse a number of times, and the others were men who had either driven it or seen it frequently, one of them being a former owner. The knowledge of these witnesses as to the disposition of the horse covered a period prior and up to the time of the accident. There was no reason why this evidence was not entirely competent, and it was properly admitted. Appellee offered no instructions. Several of the instructions given for appellant, however, were so modified by the court as to announce the now obsolete doctrine of comparative negligence, and this action of the court is urged by appellant as a reason for reversing this case. The jury, however, was repeatedly instructed that appellee could not recover unless, at the time of the accident, he was in the exercise of ordinary care for his own safety.

The instructions, when read together, plainly told the jury that the exercise of ordinary care was required of appellee as a condition to his right of recovery, and therefore the error was not sufficient to reverse the case. C. & A. R. R. Co. v. Matthews, 153 Ill. 268; Wenona Coal Co. v. Holmquist, 152 Ill. 581.

We find in the record no error of sufficient gravity to warrant the reversal of the judgment in this case, and the same is accordingly affirmed.

MR. PRESIDING JUSTICE CRABTREE dissenting.

I can not concur in affirming the judgment in this case. In my opinion the question as to whether appellee showed any right of recovery was very close upon the facts. The instructions as modified could scarcely fail to have misled the jury, and for that reason I think the judgment should be reversed.